UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
THOMAS V. SLATTERY,

        Plaintiff,

- against -

PEERLESS IMPORTERS, INC.

        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FOR ONLINE PUBLICATION ONLY

MEMORANDUM AND ORDER
04 CV 0275 (JG)

APPEARANCES:

    JAMES J. MAHON
        Casey Mahon & Rooney, LLP
        450 Seventh Avenue
        New York, New York 11042
        Attorneys for Plaintiff

    ALLEN B. ROBERTS
        Epstein Becker & Green, P.C.
        250 Park Avenue
        New York, New York 10177
        Attorneys for Defendant

JOHN GLEESON, United States District Judge:

        Plaintiff Thomas V. Slattery brings this action alleging employment discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the New York State Human Rights Law, N.Y. Exec. § 296 (1). Slattery alleges that defendant Peerless Importers, Inc. ("Peerless"), a wholesale distributor of wine and spirits, deprived him of the opportunity to sell a lucrative portfolio of brands.

        Peerless has moved for summary judgment, arguing that (1) Slattery cannot establish a *prima facie* case of discrimination because Slattery cannot show (a) an adverse employment action, or (b) circumstances giving rise to an inference of discrimination; and (2)

Slattery's claims are barred under the doctrine of *res judicata*. For the reasons set forth below, the motion is granted.

BACKGROUND

The relevant facts of this case, viewed in the light most favorable to Slattery, are as follows.

Slattery is a salesperson for Peerless. He was hired in 1993 at age 57, and since that time has worked in Peerless's "on-premise" sales division.[1] Peerless's salespersons are compensated on a commission basis.

1. Creation of the Exclusive Diageo Sales Division

In about February 2002, Diageo North America, Inc. ("Diageo") announced that it would partner with LVMH Moët-Hennessy ("LVMH") to bundle Diageo brands with certain LVMH brands and to transfer the entire portfolio to a single New York distributor. This combined portfolio of brands, referred to here as the "Diageo Portfolio" or "Portfolio," consists of many well-known wine and spirit brands, including Tanqueray, Johnnie Walker, Smirnoff, Hennessy, and Jose Cuervo. At the time of Diageo's announcement, Peerless was the exclusive distributor of some of the Diageo brands in New York, while its primary competitor distributed the others. The Diageo brands that Slattery sold were among the most lucrative in the industry, and he estimates that those brands generated approximately 30 percent of his commission income.

---

[1] The "on-premise" division sells to hotels, restaurants, bars, clubs, and catering establishments. The "off-premise" division sells to retail stores.

Diageo held a competition among distributors for the right to be the exclusive distributor of the Portfolio. Diageo required that the winning distributor create a sales force dedicated exclusively to distributing the Portfolio. In about July 2002, Peerless won the exclusive distributorship of the Portfolio in New York State. As a result, Peerless created a dedicated on-premise sales division to sell only the Portfolio, which it named the Atlantic Wine and Spirits Company On-Premise Division (the "Atlantic Division"). The Atlantic Division was scheduled to become effective on October 1, 2002. None of the existing Peerless on-premise salespersons, including Slattery, were permitted to transfer to the new Atlantic Division. These salespersons thus lost the right to distribute the lucrative Diageo products that they had previously sold. Slattery believes that he could have doubled or tripled his commission income if he had been permitted to transfer to the Atlantic Division.

Slattery alleges that Peerless's purpose in excluding existing on-premise salespersons from the Atlantic Division was to drive older salespersons away and replace them with younger ones. At the time the Atlantic Division was created, at least two-thirds of the Peerless on-premise salespersons were over the age of 40. From Slattery's observation, almost all the new salespersons hired for the Atlantic Division were under 40.

Peerless asserts that it decided to hire new salespersons for the Atlantic Division rather than use existing employees because it "was concerned that transferring salespersons from its existing divisions would disturb existing suppliers and cause them to question whether their products would continue to be sold by the experienced salespersons who have sold their products for years." Miranda Aff. ¶ 14.

Slattery no longer receives commissions on any Diageo brands. He still processes his customers' orders for Diageo brands, however, and Slattery asserts that the "young" Atlantic Division salespersons are thus "free riding" on his work.

2. The Union Grievance

On August 20, 2002, the United Food and Commercial Workers Local 2D (the "Union") requested arbitration in connection with the new Diageo-Peerless distribution arrangement. The Union claimed, in part, that the arrangement violated the Union-Peerless collective bargaining agreement's ("CBA's") anti-discrimination provisions. On September 25, 2002, a hearing was conducted before Arbitrator Elliot D. Shriftman. About 16 (out of about 60) Peerless on-premise salespersons attended the hearing. Slattery did not attend. After the opening of the hearing and statements by the parties setting forth their respective positions, the Union and Peerless negotiated a settlement and Consent Award. Under the terms of the Consent Award, existing Peerless on-premise salespersons would receive new accounts and cash payments. Slattery received both, but the new accounts have generated little in commissions for him, and the cash payments he has received amount to about one-third of the money "lost" when Slattery lost the right to receive commissions on the Diageo brands.[2]

3. The Sales Quota System

Pursuant to the CBA between Peerless and the Union, Peerless instituted a sales quota system effective March 1, 2000. Under the quota system, if a salesperson failed to make

---

[2] A Peerless on-premise salesperson filed an unfair labor practice charge with the National Labor Relations Board challenging the Consent Award and arguing that the Union breached its duty of fair representation in processing the grievance. The NLRB's Regional Director dismissed the allegation, and the NLRB denied the appeal. Slattery did not participate in the NLRB challenge.

4

his quota for three months in a rolling six-month period, that salesperson would not receive general expense payments for the first month following the rolling six-month period. Any general expense payments forfeited in such a manner would be redistributed in April to the salespersons who did not forfeit any such expense payments during the preceding twelve months. Under the CBA, any salesperson who failed to make his quota for six consecutive months could be discharged. Slattery alleges that Peerless manipulated the quota system so that older salespersons would be subject to discharge, though he does not know of any salesperson who was terminated for failing to meet sales quotas. Slattery himself has never had to forfeit any of his general expense money, but he managed to meet his quotas only by working seven days a week and spending his own money on promotional activities.

  4.  <u>The State Court Action</u>

    On October 16, 2002, eighteen Peerless on-premise salespersons, each over the age of 40, filed a complaint in New York State Supreme Court. Slattery did not join in this action. These state court plaintiffs alleged substantially the same facts that Slattery has alleged here, claiming that the Diageo agreement and sales quota system discriminated against salespersons on the basis of age in violation of New York State law. On September 13, 2003, Peerless's motion for summary judgment was granted. The Court held, in part, that "[d]efendant Peerless has shown non-pretextual, non-discriminatory reasons for its actions. Plaintiffs have only raised conclusory allegations in opposition to the motion, which are insufficient." *Berliner v. Peerless Importers Inc.*, Index No. 122596/02 (N.Y. Gen. Term. Sept. 15, 2003) (citations omitted). The Appellate Division affirmed on June 22, 2004, and denied leave to appeal to the New York Court of Appeals on November 4, 2004.

5. This Federal Action

Slattery filed a discrimination claim with the EEOC, and he subsequently received a right to sue letter. On January 23, 2004, he filed this action. During discovery, a dispute arose regarding Slattery's compliance with discovery deadlines. On December 7, 2004, Magistrate Judge Gold issued an order that stated as follows:

> Plaintiff's counsel acknowledges that, despite the schedule set at the last conference, plaintiff has failed to take any discovery since that time. Accordingly, I rule as follows: . . . . Discovery is closed with the following exceptions: (i) the parties shall make available any documents or things they intend to rely on in connection with motion practice or at trial for inspection and copying by [December 17, 2004], and (ii) plaintiff may notice a 30(b)(6) deposition of defendant.

On March 14, 2004, Peerless filed its motion for summary judgment.

DISCUSSION

A. The Rule 56 Standard

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is warranted only if "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." In deciding the motion, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and ellipsis omitted).

Under Local Rule 56.1, the party moving for summary judgment must attach a statement of material facts, in numbered paragraphs, as to which it contends there is no genuine issue to be tried. Such facts will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party. Where the non-moving party controverts a statement of material fact, it must cite to "evidence which would be admissible, [as] set forth in Federal Rule of Civil Procedure 56(e)." Thus, although courts should be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question," and should carefully scrutinize affidavits and depositions for circumstantial proof that, if believed, would show discrimination, "a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

B.   The Age Discrimination Claims

Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). ADEA claims are analyzed under the same burden-shifting framework as discrimination claims brought under Title VII. *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). Age discrimination claims brought under New York State law are also analyzed under this framework, and the outcome under state law will be the same as under the ADEA. *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999).

To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must show that: "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Roge*, 257 F.3d at 168. Individuals who are 40 years old and older are members of the protected class. *See* 29 U.S.C. § 631(a).

Generally speaking, the burden of presenting a *prima facie* case is "minimal." *James v. New York Racing Ass'n,* 233 F.3d 149, 153 (2d Cir. 2000) (internal quotation marks omitted). Once a *prima facie* case is established, a presumption arises that the employer unlawfully discriminated, and the burden of production shifts to the defendant to present a legitimate nondiscriminatory reason for the challenged employment decision. *Maresco v. Evans Chemetics*, 964 F.2d 106, 110 (2d Cir. 1992). If the employer presents such a reason, the presumption of discrimination drops out of the case. The employer will be entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James*, 233 F.3d at 153.

There is no dispute that Slattery is a member of the class protected by the ADEA, or that he was qualified to sell the Diageo Portfolio. The disputed issue here is whether Slattery can establish the third and fourth elements of a *prima facie* discrimination case – that he was subjected to an adverse employment action; and that the adverse action occurred under circumstances that give rise to an inference of discrimination.

1.      Adverse Employment Action

The adverse employment action element of a *prima facie* case is satisfied by an action that "alters the terms and conditions of employment in a negative way." *Tarshis v. Riese Org.*, 211 F.3d 30, 38 (2d Cir. 2000), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.,* 534 U.S. 506 (2002). Peerless argues that because Slattery's earnings increased in the year following the formation of the Atlantic Division, he cannot show that he suffered an adverse employment action when Peerless refused to let him transfer to that division.[3] Slattery argues, however, that had he been given the opportunity to market the lucrative Diageo Portfolio, he would have significantly increased his commission income. Thus, he argues, the prohibition on transferring was an adverse action because Slattery lost out on a significant opportunity.

The fact that an employee may earn more income after an employer's action is not dispositive on the question whether the action was an adverse one. *Cf. De La Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir. 1996) (transfer to another civil service unit at same rank and pay could still be adverse employment action). While a jury may find that the "terms and conditions" of Slattery's employment were not negatively affected because of his increase in earnings, this is not a question that can properly be resolved at the summary judgment stage. Drawing all inferences in Slattery's favor, a reasonable jury could conclude that being barred from the opportunity to make significantly more money was an

---

[3] According to Peerless, Slattery earned $83,183 from October 1, 2002 through October 1, 2003 (including $10,746 pursuant to the Consent Award). Peerless calculates that "had plaintiff transferred into [the Atlantic Division] and retained his same accounts, his commissions for the same period would have equaled only $71,263." Def.'s Mem. at 15.

9

adverse employment action. Accordingly, Slattery satisfies the adverse action element of the *prima facie* test.

2. Inference of Discrimination

As a threshold matter, Peerless argues that an arbitrator's finding that Peerless did not act discriminatorily provides compelling evidence for this Court's evaluation of whether an inference of discrimination can be drawn. *See Collins v. New York City Transit Auth.*, 305 F.3d 113, 115 (2d Cir. 2002) (arbitrator's decision has probative weight in a discrimination claim where that decision is "based on substantial evidence after a fair hearing."). I disagree.

In *Collins*, the plaintiff filed a union grievance against his employer claiming that he was discriminatorily discharged. *Id.* at 117. An arbitration was held in which the plaintiff was represented by the Union. *Id.* The arbitration board conducted three days of hearings, and subsequently issued a "reasoned fourteen-page opinion," concluding that the employer had a legitimate reason for discharging the plaintiff. *Id.* at 119. The plaintiff then filed a Title VII claim. *Id.* at 117. The Second Circuit, in affirming the grant of summary judgment in favor of the employer, held that the arbitrator's decision was highly probative of the absence of discriminatory intent. *Id.* at 119.

Slattery's case is not analogous to *Collins*. First, Slattery did not file the union grievance or participate in the hearing. Second, a full evidentiary hearing never took place. Instead, after the issue was "framed" and opening statements made, the arbitrator initiated settlement talks between the parties. Geneva Aff. Ex. E, UFCW-Peerless Consent Award at 1. The arbitrator stated as follows:

> After several hours of exchange of positions and mediation by the Arbitrator, an accord was reached. . . . The Arbitrator [finds] that the settlement terms are both fair and reasonable, and that the Company's decision to take the full [Diageo Portfolio] was motivated solely to protect and enhance its business and the security of its Salespersons and was not designed to discriminate against any of its employees on any invidious basis.

*Id.* at 4. Without an evidentiary hearing, a finding of an absence of discriminatory intent in the context of a negotiated settlement does not carry the weight of such a determination made after a full hearing. *Cf. Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 n.21 (1974) ("Where an arbitral determination gives full consideration to an employee's Title VII rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record."). Here, there is no adequate record to support the arbitrator's finding, and thus I give that finding no weight in evaluating whether there are circumstances that give rise to an inference of discrimination.[4]

In any event, Peerless is entitled to summary judgment because Slattery has not established circumstances that give rise to an inference of discrimination. To survive summary judgment, conclusory allegations of discrimination are insufficient; a plaintiff must instead come forward with "specific facts" that support a finding of discrimination. *See* Fed. R. Civ. P. 56(e). Where, as here, a plaintiff fails to point to evidence that reasonably supports a finding of prohibited discrimination, summary judgment is appropriate. *Schwapp*, 118 F.3d at 110

---

[4] This is not to impugn the Arbitrator's finding in connection with the negotiated settlement between Peerless and the Union, but instead to state that the finding has no bearing on my analysis.

11

(conclusory allegations insufficient to defeat motion for summary judgment in discrimination context).

Slattery alleges two actions by Peerless from which, he argues, one could draw an inference of discrimination. First, he claims that Peerless manipulated the sales quota system to the disadvantage of older salespersons. Second, Slattery claims that two-thirds of the approximately 60 existing on-premise salespersons – all of whom were prevented from transferring to the Atlantic Division – were over the age of 40 while Peerless hired younger salespersons to staff the Atlantic division.

      a.    <u>The Sales Quota System</u>

In his complaint, Slattery states that "[the sales] quota system has been manipulated by Peerless on a continuing basis, up to and including the present, so that older salespeople would be subject to dismissal, thus clearing the way for Peerless to hire younger salespeople." Slattery has provided no evidence to support this allegation. Indeed, at his deposition, Slattery conceded that he knew of no salesperson who lost his job because he failed to meet his quota, and that he never forfeited any money for failing to meet a quota. Slattery Dep. Tr. at 38. In addition, the quota system at issue was negotiated as part of the CBA between Peerless and the Union. Although Slattery complains that he has had to work harder and expend personal funds in order to meet the quotas, he has offered no evidence to suggest that Peerless has manipulated those quotas in a discriminatory fashion.

      b.    <u>The Creation of the Atlantic Division</u>

           i.    <u>Discriminatory Treatment</u>

Slattery contends that Peerless acted with discriminatory intent when it prevented existing on-premise salespersons from transferring to the Atlantic Division. Slattery fails to provide evidence, however, from which a reasonable jury could infer that Peerless acted with such intent. Slattery merely asserts that two-thirds of the on-premise salespersons were over 40 years old, and that Peerless was hiring people under 40 years of age to staff the Atlantic Division.

Peerless has proffered a nondiscriminatory reason for its decision to prohibit all on-premise salespersons from transferring to the Atlantic Division. In an affidavit supporting Peerless's motion, Fedele Miranda, the General Manager of the Peerless Merchants Division, states that in order to win the rights to the Diageo Portfolio, Diageo required that Peerless create a dedicated sales force for the Portfolio. Miranda further explains that

> Peerless was concerned that transferring salespersons from its existing division into the [Atlantic Division] would disturb existing suppliers and cause them to question whether their products would continue to be sold by the experienced salespersons who have sold their products for years. As a result, Peerless made a business decision that it would not allow On-Premise Division salespersons to transfer to the new Atlantic-On Division.[5]

Miranda Aff. ¶ 14; *see also* Def.'s Rule 56.1 Statement ¶¶ 25-26. Slattery has not offered specific facts to contravert Peerless's stated rationale. Instead of pointing to admissible nonconclusory evidence, Slattery states only that he denies Peerless's assertion, and that it "calls

---

[5] Peerless's assertion of a nondiscriminatory reason for the challenged employment action may be viewed either as an attack on Slattery's *prima facie* case or as a basis for granting summary judgment even if such a case were established. *See Collins*, 305 F.3d at 118 n.1. As a practical matter, these two inquiries tend to collapse under the *McDonnell Douglas* framework. *Id.* (citing *Lizardo v. Denny's Inc.*, 270 F.3d 94, 103 (2d Cir. 2001). I treat Peerless's assertion of a legitimate business rationale as an attack on Slattery's *prima facie* case. Obviously, even if Slattery were deemed to have established a *prima facie* case, I would grant summery judgment for Peerless at the next step of the *McDonnell Douglas* analysis. *Id.*

for Slattery to speculate about Peerless's true motives for the actions they subsequently took." Pl.'s Rule 56.1 statement ¶ 26. This is wrong. An appropriate response to Peerless's factual showing calls not for Slattery's speculation, but for admissible evidence that shows there is a genuine issue for trial. Peerless's motives are at the heart of this case. It was incumbent upon Slattery to use the discovery tools available to him to gather admissible evidence to rebut Peerless's asserted rationale for its decision. Magistrate Judge Gold's December 7, 2004 Order makes clear that Slattery failed to take such discovery. Having foregone that opportunity, he may not avoid summary judgment here by suggesting that he need not properly contravert Peerless's statement because to do so would be to "speculate."

    ii.  <u>Disparate Impact</u>

In his reply papers and at oral argument, Slattery's counsel argues that a disparate impact claim – that is, a claim that Slattery and other older salespersons were adversely affected by Peerless's action (as opposed to deliberately discriminated against), *see Smith v. City of Jackson*, 125 S. Ct. 1536, 1539 (2005) – should allow him additional discovery. Counsel argues that in limiting discovery due to his non-compliance with discovery deadlines, Magistrate Judge Gold "did not have before him the Supreme Court's recent decision of *Smith v. City of Jackson*." Slattery contends that he is now entitled to further document discovery and depositions to attempt to support a disparate impact claim.

The argument that *Smith* – in which the Supreme Court held that disparate impact claims are cognizable under the ADEA – entitles Slattery to more discovery is, to put it mildly, meritless. First, Slattery's complaint has always alleged disparate treatment, not disparate impact. The latter theory emerged for the first time in his opposition to the instant motion.

14

Second, the notion that *Smith* opened up a new avenue for discrimination claims under the ADEA in the Second Circuit is simply wrong. The Court of Appeals has repeatedly held that disparate impact claims are cognizable under the ADEA. *See Meacham v. Knolls Atomic Power Lab.*, 381 F. 3d 56, 70 (2004), *vacated on other grounds*, 125 S. Ct 1731 (2005).[6] Indeed, *Smith* narrows the scope of disparate-impact liability under the ADEA that previously existed in this circuit. *See* 125 S. Ct. at 1546 (explaining that the ADEA's "reasonable factor other than age" ("RFOA") provision requires only that an employer show that its disputed decision was a reasonable one, and not, as was the law in the Second Circuit, that the employer's decision satisfied the more stringent "business necessity" test).

Thus, there is no justification for Slattery's eleventh-hour attempt to invoke a disparate impact theory and salvage his claim. I further observe that even if that were not the case, the claim would have no merit. The RFOA provision states that it is lawful for an employer to take action otherwise prohibited by the ADEA where the differentiation is based on reasonable factors other than age. *Smith*, 125 S. Ct. at 1543. Peerless has provided such a reasonable factor here: it prohibited its existing salespersons from transferring to the Atlantic Division in order to reassure its other suppliers that Peerless would continue to support them with experienced salespersons despite the exclusive arrangement with Diageo.

---

[6] At oral argument, Slattery's counsel argued that because the Supreme Court had granted certiorari in *Smith v. City of Jackson*, the law in this circuit was not settled. He is wrong. *See Meacham*, 381 F.3d at 70, 70 n.4 (noting that while the Court had granted certiorari in *Smith*, "[s]tare decisis requires us to hold that the ADEA allows disparate impact claims. . . . We can reject this precedent only if a Supreme Court *decision* or a decision from this circuit sitting en banc implicitly or explicitly overrules it.") (citations omitted, emphasis added).

For the foregoing reasons, Slattery has not established a *prima facie* case of discrimination based on age.[7] Peerless's motion for summary judgment is granted.

CONCLUSION

The defendant's motion for summary judgment is granted, and the case is dismissed. The Clerk of the Court is respectfully directed to close the case.

So Ordered.

JOHN GLEESON, U.S.D.J.

Dated: June 29, 2005
      Brooklyn, New York

---

[7] Because of my decision on the merits, I need not address Peerless's *res judicata* argument.